Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 1 C 1313 | **DATE** | 12/4/2001 |
| **CASE TITLE** | Britanny Hofmann vs. Abbott Laboratories, Inc. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: Defendant's motion to dismiss [6-1] is denied in part and granted in part.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | DEC 0 5 2001 | 16 |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| TSA courtroom deputy's initials | | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



| | |
|---|---|
| BRITANNY HOFMANN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 01 C 1313 |
| v. ) | |
| ) | Judge Wayne R. Andersen |
| ABBOTT LABORATORIES, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on the defendant Abbott Laboratories' motion to dismiss Counts I, III, IV, VI and VII of the plaintiff's complaint for failure to state a claim upon which relief can be granted or alternatively because Count VI fails to satisfy the particularity requirement of Federal Rule of Civil Procedure 9(b). For the following reasons, the defendant's motion is denied in part and granted in part.

## BACKGROUND

The following factual background is taken from the civil complaint filed in this Court, which, for purposes of this opinion, we assume to be true. Plaintiff Brittany Hofmann is a 27-year old woman who currently resides in the state of Indiana. In February 2000, Hofmann consulted her doctor because she believed she had suffered a miscarriage. To determine the nature of her medical condition, her doctors administered tests on a weekly basis for more than two months using kits manufactured and distributed by defendant Abbott Laboratories, Inc. ("Abbott"). Generally, the test kits manufactured by Abbott are used as a diagnostic tool to detect the presence of a hormone called human chorionic gonadotropin (hCG). Doctors test women for pregnancy by ordering an analysis



of their hCG levels. If a patient is pregnant, hCG levels should be elevated, remain elevated and increase during the pregnancy. However, an elevated hCG level in the absence of any other sign of pregnancy is an indicator of potentially very serious conditions, including ectopic pregnancy or a deadly form of cancer called trophoblastic disease. The normal course of treatment for trophoblastic disease is a vigorous regimen of chemotherapy.

When Hofmann was given the tests manufactured by Abbott in the spring of 2000, they continued to indicate that her hCG levels remained elevated. However, her doctors determined that Hofmann was not pregnant, and they diagnosed her in May 2000 with gestational trophoblast disease. Shortly thereafter, her doctors initiated treatment with methotrexate, a form of chemotherapy. However, post-chemotherapy tests showed persistent elevated hCG levels. Consequently, Hofmann's doctors ordered a full battery of imaging studies of her chest, abdomen and pelvis. All of these examinations were negative to the presence of cancer in her body. Faced with these conflicting results, Hofmann's doctors began treating her with a second form of chemotherapy, dactinomycin-D, to which the plaintiff did not respond positively. When this treatment failed to reduce the elevated hCG levels indicated by the Abbott test kits, Hofmann decided to begin a course of treatment with EMACO, a very potent form of chemotherapy.

In August 2000, Hofmann was referred to Laurence Cole, Ph.D. who requested that she submit blood and urine samples for analysis. Dr. Cole concluded that Hofmann's positive hCG results were false and that, in fact, she did not have cancer. Hofmann's chemotherapy and other cancer related treatments were discontinued shortly thereafter. According to her complaint, Hofmann now faces a substantially increased risk of contracting leukemia and other serious diseases as a result of the allegedly unnecessary chemotherapy treatments.

On February 27, 2001, Hofmann filed the instant eight count complaint against Abbott. The gist of the plaintiff's complaint is that, as a direct result of Abbott's allegedly defective test kits, all of the plaintiff's diagnoses of trophoblast disease were false and her painful chemotherapy treatments were unnecessary. Specifically, Hoffman has alleged claims of strict liability, negligence, failure to warn, breach of implied warranty, breach of implied warranty of fitness for a particular purpose, unfair and deceptive acts or practices, and intentional or negligent infliction of emotional distress.

## DISCUSSION

In considering defendant's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all allegations set forth in the complaint and draw all reasonable inferences in favor of Hofmann. *See Lachmund v. ADM Investor Services, Inc.*, 191 F.3d 777, 782 (7th Cir. 1999). A motion to dismiss, pursuant to Rule 12(b)(6), will only be granted if it appears that Hofmann could not prove any set of facts in support of her claims entitling her to relief. *See Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001); *see also Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957).

In Count I of her complaint, Hofmann alleges that Abbott is strictly liable for any and all damages she suffered as a result of Abbott's allegedly defective test kits under the product liability laws of the state of Indiana. Abbott, on the other hand, argues Count I should be dismissed because Indiana law does not allow strict liability claims in design defect cases. In Counts III and IV, Hofmann asserts that Abbott breached both an implied warranty that the tests kits were fit and safe for their intended use and an implied warranty of fitness for a particular purpose. The defendant has attacked these counts by arguing that Hofmann has not established privity between herself and Abbott.

As for Count VI, Hofmann contends that Abbott engaged in misrepresentations and/or omissions of material fact regarding the accuracy and reliability of the hCG test kits it manufactured and distributed. Additionally, Hoffman alleges that Abbott did not disclose to the medical community information it possessed concerning an available commercial fix which would have eliminated the possibility of false positive hCG levels reported by the Abbott test kits. All of these actions are allegedly violations of the consumer protection statutes of Indiana, Ind. Code § 24-5-0.5-1, *et seq.* Abbott attacks Count VI on two fronts. First, Abbott argues that Hofmann did not purchase a test kit as part of a "consumer transaction." Second, Abbott contends that Hofmann has failed to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Finally, in Count VII, Hofmann asserts that Abbott is liable for intentional infliction of emotional distress. Abbott responds to this count by arguing that Hofmann cannot establish that the defendant intended to cause her emotional distress. We will address each of these counts in turn.

I. **Strict Liability**

The Indiana Products Liability Act provides, in relevant part, that "[a] person who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer . . . is subject to liability for physical harm caused by that product to the user or consumer . . . ." Ind. Code § 34-20-2-1. As the Indiana Supreme Court has explicitly recognized, this rule is a codification of the common law notion of "strict liability." *See Koske v. Townsend Eng'g Co.*, 551 N.E.2d 437, 442 (Ind. 1990).

In attacking the plaintiff's strict liability count based on this statute, Abbott makes the astonishing argument that recent amendments to the act have somehow abolished strict liability claims for design or warning defects under the act. Since it is apparent that Abbott simply wished

4

to avoid answering the substance of Hofmann's allegations in Count I, we wholly reject this argument. In a recent decision, the Indiana Supreme Court explained the nature of the amendments which Abbott claims have purged the statute of strict liability actions. In *Progressive Ins. Co v. General Motors Corp.*, 749 N.E.2d 484, 486 n.2 (Ind. 2001), the court instructed that:

> [t]he Products Liability Act was enacted in 1978. As originally enacted, the Products Liability Act covered claims in tort under the theories of negligence and strict liability. In 1983, it was amended to apply to strict liability actions only. In 1995, the legislature *reversed course and changed it back.* (internal citations omitted) (emphasis added).

This is to say, of course, that both negligence and strict liability claims are cognizable under the Indiana Products Liability Act. Further, this interpretation of the scope of the statute is in complete accord with the cases cited in the parties' briefs, including those authorities Abbott has relied upon to support its tenuous position. Accordingly, we find that Hofmann has properly stated a claim for strict liability under the Indiana Products Liability Act, and the defendant's motion to dismiss Count I is denied.

## II. Implied Warranty

Abbott argues that Counts III and IV of Hofmann's complaint must be dismissed because Indiana law allows implied warranty claims only if there is privity between the seller and the complaining party. *See, e.g., B&B Paint Corp. v. Schrock Mfg., Inc.*, 568 N.E. 2d 1017, 1019 (Ind. Ct. App. 1991) (plaintiff alleged breach of implied warranty of merchantability and implied warranty of fitness for a particular purpose. "For a cause of action to be successful under either of those two sections, the plaintiff must show privity of contract."); *Candlelight Homes, Inc. v. Zornes*, 414 N.E.2d 980, 982 (Ind. Ct. App. 1981) (reversing judgment for plaintiff on implied warranty claim because no privity existed.) Hofmann has conceded in her briefs that she was not in privity with

Abbott in that she never personally purchased a test kit from Abbott. Accordingly, as both parties are in agreement on this point, we will dismiss Counts III and IV of the plaintiff's complaint.

## III. The Indiana Deceptive Consumer Sales Act

The Indiana Deceptive Consumer Sales Act (the "Act"), Ind. Code §§ 24-5-0.5-1 *et seq.*, provides remedies to consumers and the Indiana Attorney General "for practices that the Indiana General Assembly deemed deceptive in consumer transactions." *McKinney v. State*, 693 N.E.2d 65, 67 (Ind. 1998). The Act "provides for two kinds of actionable deceptive acts: 'uncured' deceptive acts and 'incurable' deceptive acts." *Id.* at 68. At issue in this case is the defendant's argument that the sales of the hCG test kits to hospitals and laboratories were not a "consumer transaction" under the Act.

The logical place to begin an interpretation of what constitutes a "consumer transaction" is with the definition provided in the body of the Act. A consumer transaction is defined as:

> a sale, lease, assignment, award by chance, or other disposition of an item of personal property, real property, a service or an intangible, except securities and policies or contracts of insurance issued by corporations authorized to transact an insurance business under the laws of Indiana, with or without an extension of credit, to a person for purposes that are primarily personal, familial, charitable, agricultural, or household, or a solicitation to supply any of these things.

Ind. Code § 24-5-0.5-2(1). Assuming all the facts in her complaint are true and drawing all reasonable inferences in her favor, we conclude that Hofmann's complaint states a claim under the Act. However, we would like to note at this juncture that this is a close call. We anticipate reviewing the results of the forthcoming discovery on issues such as whether Hofmann is in fact a consumer of these tests kits and the extent of any reliance she placed on alleged misrepresentations made by Abbott regarding the nature or accuracy of its test kits. Nevertheless, at this point in the

case, Abbott's substantive motion to dismiss is denied, and we conclude that the Indiana Deceptive Consumer Sales Act may govern the transactions at issue.

Next, Abbott attacks Count VI of the plaintiff's complaint because, according to the defendant, Hofmann has not indicated specifically what type of deceptive act Abbott has engaged in. While a careful reading of the complaint shows that Hofmann is alleging an "incurable" deceptive act, the plaintiff has resolved any perceived ambiguity by declaring unequivocally in her briefs that her claim is of an "incurable" deceptive practice. (*See* Plaintiff's Response Brief at 7.) Therefore, given that this is an incurable deceptive practice count, both parties agree that the complaint is governed by Federal Rule of Civil Procedure 9(b). *See McKinney*, 693 N.E.2d at 71-72.

Rule 9(b) of the Federal Rule of Civil Procedure requires that "in all averments of fraud or mistake, the circumstances must be stated with particularity." The defendant contends that Hofmann's allegations are impermissibly vague and thus violate the Rule. In response, the plaintiff asserts that her claim under the Indiana Deceptive Consumer Sales Act is alleged with sufficient particularity to satisfy Rule 9(b). We agree with the plaintiff.

Under Rule 9(b), a plaintiff must plead with specificity the who, what, where, and when of the alleged fraud. *See Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999); *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994). The purpose of the heightened pleading requirement in fraud cases is to force the plaintiff to do more than the usual investigation before filing her complaint. *See Ackerman*, 172 F.3d at 469.

It is apparent from the face of the plaintiff's complaint that she has satisfied the heightened pleading requirements imposed by Rule 9(b). Specifically, the allegations of Count VI are quite clear it was the defendant that allegedly misrepresented the accuracy of its hCG test kits and that it

7

was the defendant that allegedly failed to reveal the availability of the commercial fix which would have corrected the purported problem. As for the "when" allegations, Hofmann contends that the period of fraud began in 1980, when Abbott first introduced the IMx test kit, and it has continued through the date of her false positive results and beyond. While the defendant disparages this allegation as too vague to satisfy the 9(b) requirements, we disagree. We are not troubled by the fact that Hofmann has alleged a long time frame. The extended period of time during which she claims the fraud and deceptive trade practices took place is consistent with the conduct she contends was violative of the Indiana Deceptive Consumer Sales Act. Therefore, we find that the allegations contained in Count VI of Hofmann's complaint are pled with sufficient particularity to give Abbott adequate information to prepare its defense against the suit. In addition, the allegations provide evidence that Hofmann has performed "more than the usual investigation before filing [her] complaint." Therefore, the motion to dismiss Count VI is denied.

## IV. Intentional Infliction of Emotional Distress

Finally, Abbott argues that Count VII for intentional infliction of emotional distress must be dismissed because she has failed to allege facts which support a claim that the defendant's actions were directed toward her personally. In Indiana, the tort of intentional infliction of emotional distress has been described as "extreme and outrageous conduct [which] intentionally or recklessly causes severe emotional distress to another." *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991); *see also Mitchell v. Stevenson*, 677 N.E.2d 551, 563 (Ind. Ct. App. 1997). The intent to harm someone emotionally forms the basis for this tort. *See Watters v. Dinn*, 633 N.E.2d 280, 292 (Ind. Ct. App. 1994).

In *Parks v. Danek Medical, Inc.*, 1999 WL 1129706 (N.D. Ind. June 17, 1999), the Northern District of Indiana was confronted with a case that is very similar both factually and legally to the instant matter. In *Parks*, the Court was also faced with a medical equipment products liability complaint. In that case, the plaintiff was injured by the implantation of a spinal fixation device, manufactured and distributed by the defendant, in his spine during fusion surgery. *Id.* at *2. When the Court, on the defendant's motion for summary judgment, addressed the plaintiff's claim for intentional infliction of emotional distress, it held that judgment as a matter of law was appropriate because the plaintiff failed to offer "any proof that [the defendant's] actions were either directed to him personally or calculated to cause him emotional distress." *Id.* at *11. The same can be said for Hofmann's allegations of intentional infliction of emotional distress against Abbott.

In this case, Hofmann has alleged that Abbott "actively promoted and marketed the [hCG test kits] with inadequate regard to the health of the recipients or adequate warnings concerning the potentially dangerous health consequences while in possession of knowledge that the effects of said product failures were potentially severe, chronic, disabling and permanent." (Hofmann Complaint at ¶ 95.) Further, Hofmann has argued that Abbott "knew the use of said product would cause the recipients of said products extreme emotional distress on a long-term basis." (*Id.* at ¶ 96.) Nevertheless, as in *Parks*, Hofmann has not offered any proof that Abbott's actions in manufacturing, distributing, or drafting warnings regarding the use of the hCG test kits were directed to her personally. In fact, her allegations in Count VII are wide reaching and diffuse. As a result, they are insufficient to state a claim for intentional infliction for emotional distress under Indiana law. Count VII is dismissed.

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss Counts I and VI of the plaintiff's complaint for failure to state a claim upon which relief can be granted is denied. The defendant's motion to dismiss Counts III, IV, and VII is granted. All other counts of the plaintiff's complaint remain viable.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: December 4, 2001